UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-mj-197 (GHM) |
| : | |
| RACHEL MARIE POWELL, : | |
| Defendant. : | |

**APPEAL OF RELEASE ORDER AND MOTION
FOR EMERGENCY STAY**

On January 6, 2021, the defendant, Rachel Marie Powell, picked up a large pipe and used it as a battering ram to break into the United States Capitol. Then, amplified by a large bullhorn, she corralled her fellow rioters and gave instructions on how to "take" the Capitol, including instructions that revealed operative knowledge of the inner-Capitol layout. For this conduct, she has been charged by Complaint with several offenses, including a crime of violence. For the reasons discussed below, the Government moves this Court to review a decision by a Magistrate Judge in the Western District of Pennsylvania to release Powell pending resolution of her criminal case. The Magistrate Judge has stayed her release order until 5 p.m. on February 10, 2021. Accordingly, the United States also requests a continued emergency stay of the Magistrate Judge's order to the extent necessary to consider this appeal.

   **I.     Procedural History**

On February 4, 2021, the defendant was arrested in the Western District of Pennsylvania on a warrant issued by Magistrate Judge G. Michael Harvey. The defendant has been charged with violations of 18 U.S.C. § 1512(c) (Obstruction), 18 U.S.C. § 1361 (Depredation of Government Property), 18 U.S.C. § 1752(b)(1)(A) (Restricted Building or Grounds with a Dangerous Weapon, 18 U.S.C. § 1752(a) (Restricted Building or Grounds), and 40 U.S.C. § 5104(e)(2) (Violent Entry

or Disorderly Conduct). The defendant made her initial appearance on February 5, 2021, before Magistrate Judge Lisa Pupo Lenihan in the Western District of Pennsylvania.[1] The Government sought detention on the basis that the defendant was both a danger to the community, and a flight risk. A detention hearing was held on February 9, 2021.[2] A Federal Bureau of Investigation (FBI) Special Agent testified about the defendant's criminal conduct. Following the hearing, Magistrate Judge Lenihan ordered the defendant released, finding that although Powell was dangerous, there were conditions that could be imposed that could reasonably ensure the community's safety. These conditions included setting an unsecured $10,000 bond, and putting the defendant on home detention with electronic monitoring. Magistrate Lenihan did not find that the defendant was a flight risk. The Government sought and was granted a stay of the order of release until 5:00 p.m. on February 10, 2021.

## II.  Factual Background

### a. The Incursion at the United States Capitol

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in the District of Columbia. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was

---

[1] The preliminary hearing was deferred to later date in the District of Columbia.

[2] The government ordered a copy of the transcript of the hearing on an expedited basis and will provide it to the Court upon receipt. The government utilized a PowerPoint presentation during the hearing, which is attached as Exhibit A.

present and presiding, first in the joint session, and then in the Senate chamber.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, between 1:00 p.m. and 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

### b. Rachel Powell's Criminal Conduct

On January 6, 2021, the defendant used a large pipe as a battering ram to break into the U.S.

Capitol building. She climbed into the building through a broken window, surveyed the scene, and then exited. Then, taking up a bullhorn, Powell instructed her fellow rioters on how to penetrate the Capitol based on what she'd seen. This is detailed in the affidavit in support of the criminal complaint, attached as Exhibit B. Powell's instructions to her fellow rioters can be seen in the video shown by the Government at the detention hearing, and is attached as Exhibit C.[3]

In the video footage, one rioter inside the building is heard asking, "what's the floor plan?" Another man with a helmet is heard shouting, "We just need a plan. We need enough people. We need to push forward." Shortly after, the defendant is clearly seen speaking through a bullhorn and heard giving very detailed instructions about the layout of the Capitol building to others inside the room. She can be heard stating that she had just been inside the Capitol Building in the adjacent room, and that they should "coordinate together if you are going to take this building."  She also flags that they "have another window to break." Later, she is photographed in the tunnel of the Capitol building where law enforcement was assaulted.

On February 1, 2021, the New Yorker published an online article entitled: "A Pennsylvania Mother's Path to Insurrection." The article profiles the defendant. She was interviewed by the author, Ronan Farrow, for over two hours. It describes her as a fugitive, and explains that she was the subject of an FBI poster soliciting information about her identity from the public.[4] A copy of the article is attached as Exhibit D. In the article, Powell acknowledges her role in events at the Capitol. She is quoted, as stating, "[l]isten, if somebody doesn't help and direct people, then do more people die?" and

---

[3] Due to the size of the video, the government will provide it to the Court on a DVD. It can also be seen here: https://twitter.com/i/status/1357740960894091266.

[4] The New Yorker describes the poster as a "Wanted" Poster. In the detention hearing, the testifying special agent explained that it was what they refer to as a BOLO, which stands for "Be On the Lookout For." A copy of the FBI poster is Exhibit 12 of the government's PowerPoint presentation.

"That's all I'm going to say about that. I can't say anymore. I need to talk to an attorney."

Powell is the mother of eight children. Two of them are adults. She shares custody of six with her ex-husband. They range in age from 4 to 17 years old. On January 6, 2021, while she was in the District of Columbia attacking the Capitol, Powell left the children at home, unattended. On Saturday, January 30, 2021, the day before the New Yorker article appeared in print, she dropped off the children at her ex-husband's house with no explanation, and no indication of when she would return. The defendant's husband is seeking full custody of the children, and is ready and able to provide for their care. Powell's family court lawyer has withdrawn his representation because he had not been able to contact the defendant.

On February 4, 2021, at 7:00 a.m., the United States contacted the defendant's attorney and explained that the government had obtained a warrant for the defendant's arrest, and a search warrant for the defendant's property. The attorney had identified himself as Powell's attorney by contacting the U.S. Attorney's Office the previous day. The defendant's attorney indicated that he did not know where the defendant was. Midday, the attorney told law enforcement that the defendant was near Harrisburg, Pennsylvania, but would not give a precise location. Eleven hours from the time the attorney was contacted, following a conversation with the FBI, the defendant was arrested at an FBI field office located four hours from Harrisburg. She did not have her cell phone on her person or in her vehicle when she was arrested. The defense attorney indicated at the detention hearing that she may have been instructed not to bring it with her.

Also on February 4, 2021, in the morning, law enforcement searched the defendant's residence pursuant to a warrant issued in the Western District of Pennsylvania. At the residence, there were several smashed cell phones (Exhibit 14 of the PowerPoint), and firearms paraphernalia (Exhibits 19 and 20 of the PowerPoint). There were also bags which law enforcement described as "go bags"

5

because they appeared to be prepacked for a forthcoming departure (Exhibits 15 and 16 of the PowerPoint). Information obtained by law enforcement indicates that the defendant had a cell phone on her person on February 4, 2021, and used it to contact her ex-husband using an encrypted application.

### III. Argument

#### a. Legal Standards

Because this Court has original jurisdiction over the defendant's prosecution, it has sole authority to review the Magistrate Judge's release order and may stay that order pending review. *See* 18 U.S.C. § 3145(a)(1) ("If a person is ordered released by a magistrate, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."); *see also, e.g.*, *United States v. El-Edwy*, 272 F.3d 149, 152-54 (2d Cir. 2001) ("With respect to the decision whether to detain or conditionally release the defendant, . . . section 3145(a) makes clear that the ultimate authority lies with the district that has the primary interest in the question—the district in which the prosecution is pending."). The review of a magistrate's release order is *de novo*. *See, e.g., United States v. Tortora*, 922 F.2d 880, 883-84 (1st Cir. 1990); *United States v. Hudspeth*, 143 F.Supp.2d 32, 35-36 (D.D.C. 2001) (Kennedy, J.).

The government may move for pretrial detention in any case, among others, charging "crime of violence" 18 U.S.C. § 3142(f)(1)(A), or involving "a serious risk that such person will flee," 18 U.S.C. § 3142(f)(2)(A). The defendant is subject to a pretrial detention request by the government in this case, because (1) she is charged with a crime of violence (18 U.S.C. § 1361) (Depredation of Government Property) and (2) she poses a risk of flight. If the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the Court] shall order the detention

of the person before trial." 18 U.S.C. § 3142(e)(1). A finding of either risk of flight or danger is sufficient for detention. *See e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). The former must be established by a preponderance of the evidence, *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996), and the latter by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). The government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). Here, the Magistrate Judge made a finding that the defendant was dangerous, but ordered the defendant's release. In reviewing this decision, this Court should consider: (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger the defendant poses to any person or the community. 18 U.S.C. § 3142(g).

    b. **Analysis**

Each of the four statutory factors favor detention. First, the nature of circumstances of the case are uniquely disturbing. The defendant abandoned her children and traveled to the District of Columbia to participate in an act of insurrection. She came prepared, armed with earmuffs designed to muffle gunfire and wearing a jacket designed to conceal a weapon.[5] Not content to peacefully demonstrate, she used a battering ram to break into the U.S. Capitol. In doing so, she put the lives of both law enforcement and rioters in jeopardy. Then, she directed her fellow rioters on how best to penetrate the Capitol. By directly encouraging violence and destruction, the defendant fueled a situation that threatened the peaceful transfer of power in the United States.

Second, as Judge Lenihan recognized, evidence against the defendant is overwhelming, including not only photographs and videos of her participating in the offenses alleged, but her own

---

[5] The earmuffs and jacket can be seen in Exhibit 4 of the PowerPoint presentation, along with a side-by-side picture of the defendant pulled from social media, wearing the same or similar earmuffs at a firing range.

words to the media confirming her illegal presence on the Capitol grounds. She is a highly visible figure from the insurrection. The offenses with which she has been charged carry substantial penalties, which incentivizes flight and evading law enforcement—a thought that the defendant already appears to have contemplated by virtue of her leaving her children a second time on January 30, 2021.

Third, the defendant's history and characteristics indicate a disregard for the aims of law enforcement. Once she realized she had been discovered, instead of turning herself in, she gave an interview to the New Yorker. She did not express remorse. A search of her residence revealed smashed cell phones, and firearms paraphernalia. Moreover, her attorney proffered during the detention hearing that Powell had asked a friend to hold on to her handgun and AR-15.[6] Although Pennsylvania law may permit the defendant to maintain such an arsenal, it nonetheless indicates the continued capacity to carry out the sort of fear and intimidation that took place at the Capitol. Further, the defendant has no known ties to the District of Columbia, and appears to have traveled back to Pennsylvania after committing the crimes alleged in the Complaint.

Finally, it is difficult to fathom a more serious danger to the community. It bears repeating that the defendant was a leading participant in the most violent insurrection to occur at the U.S. Capitol in over 200 years. She was no onlooker; she perpetrated violence and encouraged others to do the same—all aimed at overcoming law enforcement, intimidating public officials, and undermining the Constitution and the peaceful transfer of presidential power. Such danger merits pretrial detention.

---

[6] Judge Lenhian expressed concern about the weapons being passed around, and instructed the defendant to work with law enforcement to keep them secure.

### IV. Conclusion

There is no release condition or combination of release conditions that will reasonably assure the community's safety or the defendant's return to court. This Court should order the defendant detained pending a trial. A proposed transportation order, as well as an order for a continued stay, is attached.

        Respectfully submitted,

        MICHAEL SHERWIN
        ACTING UNITED STATES
        ATTORNEY

        /s/Elizabeth Aloi

        Elizabeth Aloi
        Assistant United States Attorney
        NY Bar: 4457651
        U.S. Attorney's Office
        555 4th Street, N.W., 5th Floor
        Washington, D.C. 20530
        202-252-7212